1  JAMES DAL BON
2  LAW OFFICE OF JAMES DAL BON
   606 N. 1ST St.
3  SAN JOSE, CA 95112
   Telephone:   (408) 466-5845
4  Facsimile:   (408) 286-7111

5  Attorney for Plaintiffs

6

7                    UNITED STATES DISTRICT COURT

8                       NORTHERN CALIFORNIA

9   CESAR LEDO, an individual,              Case No. l7-CV-02393 LHK
    MIGUEL LEDO, an individual,
10  RICARDO CHOY MOREY, an individual

11  PLAINITFFS AND PUTATIVE                 NOTICE OF MOTION FOR FINAL
    PLAINTIFFS                              APPROVAL OF A CLASS ACTION,
12                                          MEMORANDUM OF POINTS AND
                                            AUTHORITIES AND DECLARATION IN
13                                          SUPPORT THEREOF

14          vs.                             DATE:
                                            TIME:
15  GUILLERMO PRADO INDIVIDUALLY            COURTROOM
16  AND DBA DONA MARIA MARIA PRADO
    INDIVIDUALLY AND DBA DONA               HONORABLE JUDGE LUCY KOH
17  MARIA

18          Defendants.

19

20

21  NOTICE IS HEREBY GIVEN that on December 9th 2018, at 1:30 p.m., or as soon thereafter as the matter may be

22  heard, in Courtroom 8,  5th Floor, of the United States District Court for the Northern District of California,

23  San Jose Courthouse, located at 280 South 1st Street, San Jose, California 95113, before the Honorable Lucy H

24  Koh, Plaintiffs Cesar Ledo, Miguel Ledo and Ricardo Choy Morey as an individual and on behalf of all others

25  similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc.

26  23(e) and 29 U.S.C. § 216(b):                                          1.      Finally

27  certifying the California Commission Overtime Subclass for settlement purposes under Rule 23(e) of the

28  Federal Rules of Civil Procedure;

1

2.      Finally certifying the FLSA Commission Overtime Subclass for settlement purposes under the Fair Labor Standards Act ("FLSA");

3.      Appointing Cesar Ledo, Miguel Ledo and Ricardo Choy Morey as the Class Representatives 4.      Appointing James Dal Bon, as Class Counsel for settlement purposes;

5.      Granting final approval to the class action settlement based upon the terms set forth in the Settlement Agreement (see Docket Entry 30-1, at Exhibit 1 attached thereto) as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure; and

6.      Entering final judgment in the form of the proposed Final Approval Order filed herewith Order.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the declarations of James Dal Bon and Audrey Chow,  submitted in support of Plaintiff's Motion for Final Certification and Costs, and Class Representative's Incentive Payment, the supplemental Declaration of Audrey Chow of CPT Group, Inc., and the exhibits attached thereto, the proposed Order submitted herewith, the Settlement Agreement, all other pleadings and other papers filed in this action, and any oral argument or documentary evidence that may be considered by the Court.

 November 8, 2018

                                            LAW OFFICES OF JAMES DAL BON


                                            _____

                                            James Dal Bon

1       <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2       <u>INTRODUCTION</u>

3       <u>FACTUAL HISTORY</u>

4

5       <u>THE STIPULATED SETTLEMENT</u>

6       <u>CLASS PARTICIPATION</u>

7       <u>ARGUMENT</u>

8       I.      THE CLASS MEETS THE REQUIREMENTS OF RULE 23

9       II.     THE SETTLEMENT IS FAIR UNDER RULE 23 AND THE FSLA

10

11      III.    THE NOTICE GIVEN THE CLASS IS ADEQUATE

12      IV.     THE SERVICE AWARDS ARE FAIR

13      <u>CONCLUSION</u>

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>TABLE OF AUTHORITIES</u>

2

Staton v. Boeing, 327 F.3d 938, 953 (9th Cir.2003) 11

3

Ansari v. New York Univ. (SD NY 1998) 179 FRD 112, 114.  11

4

Consolidated Rail Corp. v. Town of Hyde Park (2nd Cir. 1995) 47 F3d 473, 483. 11

5

Miri v. Dillon (ED MI 2013) 292 FRD 454, 4611.  11

6

Wal-Mart Stores, Inc. v Duke (2011) 564 U.S. 338, 350, 131 S. Ct. 2541, 2541. 11

7

General Tel. Co. of Southwest v. Falcon  457 U.S. 147, 156 (1982). 12

8

Wolin v. Jaguar Land Rover North America, LLC (9th Cir. 2010) 617 F3d 1168, 1176 12

9

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) 11, 13

10

Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 266 (D. Conn. 2002) 13

11

Janikowski v. Castaldi, Case No. 01CV0164 (SJF) (KAM), 2006 WL 118973 (E.D. N.Y. Jan. 13,

12

2006). 13

13

Rodriguez v. W. Pub. Corp., 563 F.3d 948, 962 (9th Cir.2009) 15

14

<u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443, 453 (E.D. Cal. 2013) 16

15

Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 490 (E.D. Cal. 2010) 16

16

Statutes

17

Fed. R. Civ. P. 23(a). 11

18

Fed. R. Civ. P.  23(b)(3) 11

19

Fed. R. Civ. P. 23(c)(2)(B) 13

20

Fed. R. Civ. Proc. 23(e) 16

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

<u>INTRODUCTION</u>

Plaintiffs seek final approval for a class action filed on April 26, 2017 for nonexempt employees against the owners of Dona Maria's, a small chain of Mexican food restaurants. Plaintiffs alleged violations of federal and state wage law under the Fair Labor Standard Act and California Labor Code.  Plaintiffs alleged Defendants failed to pay overtime, shaved time, issued inaccurate paystubs and failed to give employees legally mandated breaks. Defendants denied all of the Plaintiff's allegations.

The Parties attended a mediation on March 9, 2018 with Jamie Jacobs May, a retired judge experienced in settling wage and hour class actions.  After a full day of arm's length negotiations, the Parties settled the class for a total of $275,000 on behalf of 222 of the Defendant's former and present employees.    The court granted preliminary approval of the class on August 21, 2018. Through this Motion, Plaintiff requests certification and final approval of the two  settlement classes for the state law violations under Rule 23 along with the collective action component of each class for violations of the FSLA.

<u>FACTUAL HISTORY</u>

During the class period, April 26, 2013 to April 1, 2018, Guillermo Prado and Maria Prado (collectively known as Defendants) owned three to five Dona Maria's restaurants primarily in Santa Clara County.  The Defendants employed Cesar Ledo, Miguel Ledo and Roberto Choy Morey (collectively known as Plaintiffs) as non-exempt restaurant workers during the class period.  The Plaintiffs alleged the Defendants paid their non-exempt

employees overtime wages at the regular rate of pay and failed to provide them and their other employees with legally mandated rest and meal breaks.

The Plaintiffs' case is strongest against the Defendants during the earliest period of the class.  In deposition Guillermo Prado admitted that from April 26, 2103 to December 9, 2014 they paid the restaurant's employees in cash and check and at the regular rate of pay for overtime hours. Doc # 37 Ex 1  Depo of G. Prado p 19 ln 16 – 25, p 20 ln 1-25 p.  During that period, Claudia Hernandez, the person in charge of payroll and time keeping for Defendants testified the Defendant's employees filled out time cards by hand. See Doc 37 Ex 2 Depo of Claudia Hernandez p 8 ln 14-15. During this time the paystubs received by the Defendant's employees did not receive paystubs that reflected their cash payments.

By at least November of 2014 the Prados stopped paying their employee in cash and implemented a new pay roll system. Doc 37 Ex 2 Depo of Claudia Hernandez p 8 ln 1-16.  In the new system, each employee received a unique identification number they punched into a computer at the start of their shift.  Defendants required their non-exempt employees to punch out then back in for their lunch breaks then out at the end of the day.  Doc 37 Ex 2 Depo of Claudia Hernandez p 10 ln 1-24.  Every two weeks Ms. Hernandez collected the information from the computers and printed a time card for their employee to approve. Doc 37 Ex 2 Depo of Claudia Hernandez pp 13-15.  Once the hours are recorded and approved Ms. Hernandez sends the time cards to ADP for payment. Id at p 15. It was on this basis the Parties created the Overtime Class for non-exempt workers employed by Defendants between April 26, 2014 and December 31, 2014.

Plaintiffs acknowledge the Defendants changed their payroll system sometime in

November of 2014.  The payroll records reflect that the majority of Defendant's employees stopped turning in handwritten time records by at least December 31, 2014. Doc # 30 Decl James Dal Bon. The records produced by the Defendant's employees show that by at least January 1, 2015 the Defendants started paying overtime, recorded their employees' work hours on their checks, and had their employees punch in and out for their lunch breaks.  See Decl of James Dal Bon and Ex 1.   On the basis of the aforementioned factual record, the parties agreed at mediation to create the "OT Class" consisting of all non-exempt hourly employees employed by Dona Maria's between April 26, 2013 and December 9, 2014 who were not paid overtime at the rate of 1.5 times their regular rate of pay.

The Plaintiffs also alleged that the Defendants shaved time from their payroll records using two methods.  First the Plaintiffs allege that the Defendants simply would deduct five minutes or more from their employees' time cards.  In second method, the Defendants would automatically deduct thirty minutes from their pay for a lunch period regardless of whether they took a lunch break.  Since the Plaintiffs claim they did not consistently take thirty-minute lunch breaks this resulted in work time being erased from their recorded work hours.

Conflicting evidence exists on whether the Defendants had a policy of shaving time. In deposition there was some evidence of time shaving.  Ms. Hernandez testified that when employees punched in early, she rounded the time up five minutes.  Doc 37 Ex 2 Depo of Claudia Hernandez p 33 ln 19-25.  Ms. Hernandez admitted she would deduct 30 minutes from an employee's time card for lunch if a manager or an employee called to state they did not punch out for lunch. Doc 37 Ex 2 Depo of Claudia Hernandez p 36 ln 36 p 37 ln 1 – 15. She stated that

8

she sometimes noted when she deducted 30 minutes due a manager or employees' request. Doc 37 Ex 2 Depo of Claudia Hernandez p 38 ln 14 to 18.  A review of the time records, particularly after the Defendants started the new system show that Ms. Hernandez did not regularly mark the time cards when she changed them.  Occasionally the words "fixed" appear next to a time entry.  However, there is no notation as to why or how the time entry was "fixed".  See Doc #37 Ex 3

Additionally, there is evidence in the time records that indicates the Defendants rounded off significant periods of time off their employee's time cards.  For example, in the time card dated June 19, 2015 through July 2, 2015 the Defendants rounded a total .35 off an hour off  (about twenty minutes) of one of their employee's work hours for that two week pay period. Doc # 30 Ex 3 Time Card .  However, evidence also existed showing that the Defendants' rounding practices resulted time being added to the Plaintiff's time cards.   For the time period 1/3/2016 to 1/16/2016 the Defendants added .25 (about fifteen minutes) of overtime to an employee's time card Doc # 30 Ex 3 Time Card.  Class counsel's examination of the time records demonstrates that the employees regularly punched in and out for their breaks.  Additionally, other employees  simply did not work more than five hours under and were not due a lunchbreak for those days. Cal. Lab. Code Section 226.  See Exhibit 1 attached to Declaration of James Dal Bon  Sample of the Time Cards.

On the basis of the deposition testimony of the Plaintiffs and Defendants, the payroll and time cards the parties agreed at mediation to create the "Hourly Wage Class".  The "Hourly" Class  consisted of all non-exempt hourly employees employed by Dona Maria's between April 26, 2013 and April 1, 2018 who had time shaved from their time cards, missed their breaks and received inaccurate wage statements.

## THE STIPULATED SETTLEMENT

The case settled for a total of $275,000 to be apportioned according to the following terms:

1)      A total of $105,418.93 to be reserved for the "OT" Class;

2)      A total of $67,088.57 reserved for the "Hourly" Class;

3)      Administrative Costs to CPA of between $8500 and $20,000;

4)      Service awards of $2500 a piece for the named Plaintiffs;

5)      Class counsel to receive up to $75,000 for attorney's fees and $5000 for costs;

6)      A portion of the money for each class to be reserved for the opt-in consenters;

7)      Any unclaimed money to cy pres to the George Alexander Law Center. See Doc#30 Ex 4 pp 7-10.

8)      The Settlement used the work week method to calculate the net amounts awarded to the members of each class.  In the work week method, the class members receives a pro rata portion  of the net settlement amount based upon the total number of work weeks during the class period.  The Net Settlement Fund is divided by the total number of weeks worked by each class member.  The resulting amount is the dollar amount each of the class members receives for each week they worked during the class period.  See Doc#30 Ex 4 pp 7-10.

9)      Finally, according to the settlement members of both the "OT" Class and the "Hourly" Class would receive 80% of the settlement if they did not opt-out of the Rule 23 portion of the class. Members of both the "OT" Class and the "Hourly" Class would receive an additional 20% of their net settlement amount if they opted into the FSLA portion of the class.   Unclaimed FSLA funds created by members that did not opt-in would be reallocated to those members that did opt-in. See Doc#30 Ex 4 pp 7-10.

NOTICE PROCEDURE

CPT Group, the class administrator, used reasonably ensured that all class members received notice of the settlement. The Defendants sent CPT Group the addresses of their current employees and a list of former employees. CPT Group skip traced the addresses of the former employees. On September 12, 2018 mailed the class members the Notice of Settlement. Six of the Notices were returned as undeliverable. After another investigation into their addresses, CPT Group re-mailed the notices to the six class members. Only one of those packets was returned as undeliverable. See Decl Audrey Choy

CLASS PARTICIPATION

As of today's, date:

1)    No disputes have been filed by class members;

2)    No class members filed a written objection;

3)    100% participation by Rule 23 Class members no opt-outs filed;

4)    38% or 68 class members opted into the FSLA class;

5)    CPT will charge $14,000 for administering the class;

6)    Class representatives will receive $2500 a piece;

7)    Class counsel will request a 25% attorney's fee of $68,750.00

8)    Class counsel will request $4900 in costs; See Decl Audrey Choy

The Overtime Class will receive an estimated $109,708.50. They will receive an average of $131.86 per week. The Hourly Class will receive an estimated $70,141.50. They will receive an average of $5.37. The class members will receive an average of $801. The greatest amount a class member will receive is $6485.35. The least a class member will receive is $4.30. See Decl Audrey Choy

<u>ARGUMENT</u>

I    THE CLASS MEETS THE REQUIREMENTS OF RULE 23

Class certification requires that: (1) the class be so numerous that joinder of all members individually is 'impracticable;' (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative must be typical of the claims or defenses of the class; and (4) the person representing the class must be able fairly and adequately to protect the interests of all members of the class. Fed. R. Civ. P. 23(a); Staton v. Boeing, 327 F.3d 938, 953 (9th Cir.2003). In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b). Here, the parties assert that the action is maintainable under Rule 23(b)(3) because questions of law or fact common to class members predominate over any question affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998)

Numerosity exists because there are approximately 62 members of one class and 220 of the other. "Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." Ansari v. New York Univ. (SD NY 1998) 179 FRD 112, 114 (emphasis added); also see Consolidated Rail Corp. v. Town of Hyde Park (2nd Cir. 1995) 47 F3d 473, 483—numerosity presumed at level of 40 members; Miri v. Dillon (ED MI 2013) 292 FRD 454, 461—numerosity satisfied where putative class comprised of 150 members. Even the smallest number, 68 class members, fits within the acceptable range of the class size.

1

2    Commonality exists in this case. This requirement is met through the existence of a

3    "common contention" that is of such a nature that it is capable of class wide resolution in

4    "one stroke." Wal-Mart Stores, Inc. v Duke (2011) 564 U.S. 338, 350, 131 S. Ct. 2541, 2541 The

5    Plaintiff has alleged violations of wage and hour law that are capable of class-wide

6    resolution.  The Defendants policy towards overtime, rounding time, rest and meal period

7

8    violations are all capable of class wide resolution.

9    Typicality exists in this case.  The claims of the purported class representative need

10   not be identical to the claims of other class members, but the class representative "must be

11   part of the class and possess the same interest and suffer the same injury as the class

12   members." General Tel. Co. of Southwest v. Falcon, supra, 457 US at 156, 102 S.Ct. at 2370;

13   Wolin v. Jaguar Land Rover North America, LLC (9th Cir. 2010) 617 F3d 1168, 1176. All three

14   members of the case worked for the Defendants during the Overtime Class period and the

15   Hourly Wage Class period.  Their claims are identical to those alleged in the complaint on

16   behalf of the class members.

17   The class members have been adequately represented in this case.  None of the named

18   class members have a conflict.  The class members have vigorously prosecuted the case, all

19   three participating in the investigation, deposition and mediation of this case.  Class counsel

20   has successfully litigated the following Class Actions in Santa Clara County Superior Court

21   Rosales vs Heavenly Greens 1-cv-119684; Lopez vs Logistics Delivery Solutions 113-cv-249431,

22   Diaz vs Heavenly Greens 16-cv295143 and Cooke vs A is for Apple 15-cv-279579.  Plaintiffs'

23   counsel has prosecuted 178 wage and hour cases in federal court and probably another fifty

24   in state court over the past twelve years

1

2    II    THE SETTLEMENT IS FAIR UNDER RULE 23 AND THE FSLA

3        Fed. R. Civ. Proc. 23(e) requires the district court to determine whether a proposed

4    settlement is fundamentally fair, adequate, and reasonable.   The court considers a number

5    of factors in making the fairness determination including: "the strength of the plaintiffs'

6    case; the risk, expense, complexity, and likely duration of further litigation; the risk of

7

8    maintaining class action status throughout the trial; the amount offered in settlement; the

9    extent of discovery completed and the stage of the proceedings; the experience and views of

10    counsel; the presence of a governmental participant;[2] and the reaction of the class members

11    to the proposed settlement."  Hanlon, 150 F.3d at 1026.

12

13        The strongest factor favoring certification is the fact that none of the members of

14    either class objected to the settlement.  No disputes have been filed.  Every class member

15    that received notice of the settlement felt it was fair.  Furthermore 38% of the class members

16    opted into the FSLA settlement, a high percentage when compared to other FSLA cases

17

18    certified by the federal courts.  See Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 266 (D. Conn.

19    2002) (7.8% opt-in rate for FLSA class); Janikowski v. Castaldi, Case No. 01CV0164 (SJF)

20    (KAM), 2006 WL 118973 at *2 (E.D. N.Y. Jan. 13, 2006) (8.9% opt-in rate for FLSA class).

21        The Plaintiffs' case is strongest during the period of the Overtime Class.  The

22

23    Defendants admitted they paid overtime wages at the regular rate of pay during this period

24    and are owed overtime wages and liquidated damages under the FSLA.  Thus, the Overtime

25    Class is receiving an increased amount per work week than the Hourly Class.  There is less

26    evidence supporting a significant amount of time shaving or missed meal periods, thus the

27    Hourly  Class is receiving a reduced amount.

28

Plaintiffs face significant risk in continuing the case against the Defendants for the Hourly Class.  A final calculation of the rounding could result in little or nothing being owed to the Plaintiffs as a whole.  The Defendants kept good records of the breaks given their employees.  The Plaintiffs could receive nothing for their rest break violations.  On the other hand, if the Plaintiffs won at trial on all counts and received a seven-figure judgment it is not inconceivable that the Prados, the owners of four small Mexican food restaurants, would declare bankruptcy.

Plaintiffs engaged in extensive formal and informal discovery.  As already stated in the Motion for Preliminary Approval Plaintiff's counsel attended five depositions, analyzed over ten thousand pages of documents and interviewed his clients several times, spoke to other witnesses in the case, participated in a full day mediation and reviewed the district court's judges' decisions and those of other district court judges in Northern California regarding pre-certification of Rule 23 and FSLA claims.

As to the settlement amount,  Plaintiff's argument in the precertification motion bears repeating.  Plaintiff's best day at trial could result in a 1.2-million-dollar judgement for the combined meal and rest period violations.  This assumes that every employee missed every meal and rest break period at $10.00 per hour.   Additionally, estimating a 15-minute rounding per day for all employees, another $102,000.00 could be added to that.  There is a substantial risk that Plaintiff could lose those causes of action on summary judgment or at trial.  The evidence is just not that strong for these cases.  At least with this settlement Dona Maria's employees can take home some money for time shaving and lunch periods.

III      THE NOTICE GIVEN THE CLASS IS ADEQUATE

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Pub. Corp.,* 563 F.3d 948, 962 (9th Cir.2009)

Rule 23(c)(2)(B) contains specific requirements for the notice, namely, that the notice state in clear, concise, plain, and easily understood language:

"(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; [and] (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 453 (E.D. Cal. 2013).

In this case the Notice was mailed to the last known addresses of all class members. A second mailing was conducted after six notices were returned. As if today's date only one package remains undeliverable. The Notice fulfilled all the requirements of Rule 23 and was written in both Spanish and English.

IV.     THE SERVICE AWARDS ARE FAIR

In this case the Plaintiff's counsel is requesting service awards for each Plaintiff in the amount of $2500 per person. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 490 (E.D. Cal. 2010) Twenty-five hundred dollars seems like a modest sum considering the Plaintiffs attended depositions, went to the mediation and actively participated in the investigation.

CONCLUSION

Plaintiff's counsel respectfully requests the court approve the settlement for final certification.

November 9, 2018

*James Dal Bon*

James Dal Bon

17